**James D. WILLIAMS, Plaintiff,**

v.

**Attorney Martin CALLAGHAN, Esq., Defendant.**

**Civil Action No. 95–02335.**

United States District Court, District of Columbia.

Sept. 10, 1996.

James D. Williams, Lorton, VA, Pro Se.

James Thomas Maloney, Washington, DC, for defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

Plaintiff, who is proceeding *pro se*, brings this action against his former criminal defense trial attorney, alleging that certain of defendant's trial tactics caused plaintiff's conviction for drug distribution. Plaintiff asserts two causes of action: (1) legal malpractice; and (2) intentional infliction of emotional distress. Plaintiff's allegations are supported solely by plaintiff's own affidavit. Defendant moves for summary judgment.

## BACKGROUND

On September 14, 1990, plaintiff, represented by defendant at trial, was convicted of distribution of a controlled substance in the Superior Court of the District of Columbia. On November 8, 1990, plaintiff was sentenced to ten to thirty years' incarceration. On November 20, 1991, the District of Columbia Court of Appeals found the evidence sufficient to sustain the conviction. *James D. Williams v. United States*, Docket No. 90–1465 (Nov. 20, 1991).

Plaintiff then sought relief from his sentence in the Superior Court of the District of Columbia, pursuant to D.C.Code § 23–110. Among other claims, plaintiff alleged ineffective assistance of trial counsel. On November 11, 1992 Judge Colleen Kollar–Kotelly[1] denied plaintiff's collateral attack. The Court reasoned that plaintiff was "barred from raising his claims of ineffective assistance of counsel ... because the bases for his claims are issues of which he knew or should have known at the time of his direct appeal." *United States of America v. James D.*

*Williams*, Docket No. F–2202–90 B (Nov. 11, 1992) (citations omitted).

On November 22, 1993, the District of Columbia Court of Appeals affirmed the post-trial decision. The appellate court stated "[a]bsent a showing of cause and prejudice, which Williams has not made, this ruling was clearly correct." *James D. Williams v. United States*, Docket No. 92–CO–1458 (Nov. 22, 1993).

Plaintiff next filed a Petition for a Writ of Error *Coram Nobis*[2] which likewise contained claims of ineffectiveness of counsel. Judge Kollar–Kotelly denied the Petition on July 27, 1995, because plaintiff's claims failed to meet any of the five requirements of a Petition for a Writ of Error *Coram Nobis*.[3] Most importantly, plaintiff failed to show any facts of which the trial court was unaware that would have prevented the sentence or judgment.

Plaintiff then brought this action against defendant for legal malpractice and intentional infliction of emotional distress. Plaintiff alleges acts of negligent and intentional professional misconduct identical to those raised in the prior collateral attacks based on ineffective assistance of counsel. Specifically, plaintiff alleges the following acts of misconduct:

(1) failure to adequately investigate identification evidence with respect to plaintiff's street name (i.e. that it is "Flat" and not "Chink");[4]

(2) failure to adequately interview potential witnesses;

(3) failure to make any pre-trial motions;

(4) failure to move for a mistrial;

---

1. Judge Colleen Kollar–Kotelly was also the trial judge at plaintiff's original trial. *United States v. Williams*, Docket No. CR F–2202–90.

2. The purpose of a writ of error *coram nobis* is to provide a petitioner the opportunity to " 'correct errors of fact not apparent on the face of the record and unknown to the trial court.' " *United States v. Hamid*, 531 A.2d 628, 631–32 (D.C. 1987) (quoting *Watwood v. District of Columbia*, 162 A.2d 486, 487 (D.C.1960)).

3. Judge Kollar–Kotelly listed five requirements which must be met for a petitioner to prevail in a

Petition for a Writ of Error *Coram Nobis:* (1) the trial court was unaware of the facts giving rise to the petition; (2) the information would have prevented the sentence or judgment; (3) the failure to provide the information to the court can be justified; (4) the error is extrinsic to the record; and (5) the error is of the most fundamental character. *Hamid,* 531 A.2d at 634.

4. Plaintiff fails to identify the significance of his street name as identification evidence in either his pleadings or his affidavit.

(5) failure to vigorously cross-examine the police officer who field-tested the drugs; and

(6) failure to zealously advocate plaintiff's cause.

Defendant moves for summary judgment on grounds that plaintiff has failed to establish a prima facie case for either legal malpractice or intentional infliction of emotional distress.

## SUMMARY JUDGMENT STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court outlined the standards governing summary judgment:

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.

Rule 56 must be construed with due regard not only for the rights of the persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555 (citation omitted).

██ It is the function of the district court to determine whether any pertinent factual controversy actually exists. *Exxon Corp. v. Federal Trade Commission*, 663 F.2d 120 (D.C.Cir.1980). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236,

1242 (D.C.Cir.1987) (per curiam). Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment. Fed.R.Civ.P. 56(e). In reviewing the record all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The inferences must be reasonable, however, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993).

## ANALYSIS AND DECISION

### I. *Jurisdiction*

As in any federal lawsuit, the first question this Court must address is whether jurisdiction lies with this Court. Plaintiff claims that subject matter jurisdiction is proper based both on the federal question doctrine and on diversity. As a *pro se* party, plaintiff is entitled to liberal construction of his pleadings.

Plaintiff has not established federal question jurisdiction. Neither of plaintiff's legal claims—malpractice and the intentional infliction of emotional distress—raises a federal question.

With respect to plaintiff's claim of subject matter jurisdiction based on diversity, plaintiff is seeking two million dollars, an amount well in excess of $50,000. Plaintiff further asserts that he is a citizen of the District of Columbia ("D.C.") and the defendant is a citizen of the Commonwealth of Virginia. Since defendant does not dispute plaintiff's claim that he is a D.C. citizen, the Court finds that plaintiff has established diversity jurisdiction and will proceed to decide the substantive issues presented.

### II. *Plaintiff's Claim of Legal Malpractice*

██ Where ineffective assistance of trial counsel has previously been raised but not directly decided, as here, a judicial finding of ineffective assistance is not necessary in or-

der to find a criminal defense attorney liable for legal malpractice. *Glenn v. Aiken,* 409 Mass. 699, 569 N.E.2d 783, 785 (1991).

In a legal malpractice action in the District of Columbia, the plaintiff bears the burden of presenting evidence establishing: (1) that there was an attorney-client relationship; (2) that the attorney breached the applicable standard of care; and (3) that there was a legally cognizable harm. *Smith v. Haden,* 872 F.Supp. 1040, 1043 (D.D.C.1994). In the instant case, it is undisputed that defendant was plaintiff's criminal defense attorney. However, plaintiff has failed to meet any of the remaining prongs of the three-part test necessary to establish legal malpractice.

### A. *Breach of a Professional Standard of Care*

In order to make out a prima facie case of legal malpractice, "it is well established in this district that ... expert testimony proving the applicable standard of care is an essential element" of the case. *Appelgate v. Dobrovir, Oakes and Gebhardt,* 628 F.Supp. 378, 382 (D.D.C.1985), *aff'd* 809 F.2d 930, *cert. denied,* 481 U.S. 1049, 107 S.Ct. 2181, 95 L.Ed.2d 837 (1987). Plaintiff has failed to make any showing that he will provide expert testimony regarding the appropriate standard of care. Plaintiff's only evidence of malpractice is his affidavit. However, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." *Marks v. United States Dep't of Justice,* 578 F.2d 261, 263 (9th Cir. 1978).

"The requirement to produce an expert is excused only where the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge." *Smith,* 872 F.Supp. at 1044; *Accord Mills v. Cooter,* 647 A.2d 1118 (D.C.1994) (expert testimony required where alleged negligence was attorney's failure to join real estate brokers in an action alleging fraudulent real estate transaction). Allowing a statute of limitations to run is an example of the type of conduct by an attorney which can be found negligent as a matter of common knowledge. *O'Neil v. Bergan,* 452 A.2d 337, 342 (D.C.1982).

Plaintiff's allegations of defendant's breach are not of the sort for which the trier of fact might be able to find negligence as a matter of "common knowledge." Defendant's alleged failure to investigate, failure to interview potential witnesses and failure to vigorously cross-examine are trial tactics which would require the testimony of an expert witness to support a jury's finding of malpractice.

In the District of Columbia, vague and general allegations of professional negligence on the part of criminal defense attorneys, similar to those of plaintiff in this action, have been deemed insufficient to establish a prima facie case of legal malpractice. *See, e.g., McCord v. Bailey,* 636 F.2d 606 (D.C.Cir.1980) (summary judgment upheld where plaintiff alleged legal malpractice arising from disloyalty, failure to cross-examine with vigor and failure to raise an affirmative defense); *Bigelow v. Knight,* 737 F.Supp. 669 (D.D.C.1990) (defendant attorney's motion for judgment on the pleadings granted where plaintiff's complaint alleged legal malpractice based on defendant's failure to call two alibi witnesses and a third unnamed witness).

Strategy with respect to trial tactics is generally held to be within the discretion of the attorney. In *Appelgate,* in granting summary judgment in favor of the defendant attorney, Judge Oberdorfer noted that "[q]uestions of tactics are in the lawyer's discretion." 628 F.Supp. at 382. He then cited *Frank v. Bloom,* 634 F.2d 1245 (10th Cir.1980), where the court stated:

> The fact ... that the attorney in the heat of trial disregards the direction of the client as to trial strategy or activity does not give the client a right of action against the attorney. After all, it is the duty of the attorney who is a professional to determine trial strategy. If the client had the last word on this the client would be his or her own lawyer. Therefore, an attorney does not ordinarily violate his duty to the client by rejecting a client's suggested tactics.

*Id.* at 1256–57.

### B. *Legally Cognizable Harm*

Plaintiff in a malpractice action must show that defendant's actions caused a "le-

gally cognizable injury" or he has suffered no damages. *Becker v. Colonial Parking, Inc.,* 409 F.2d 1130 (D.C.Cir.1969). In the District of Columbia, in order to prove that he has suffered a "legally cognizable harm," the plaintiff in a legal malpractice action must show that the result of his criminal trial would have been different had his attorney not committed the alleged misconduct. *See, e.g., McCord,* 636 F.2d 606 (failure to raise an affirmative defense caused no harm since the defense would have been stricken); *Bigelow,* 737 F.Supp. 669 (failure to locate and interview witnesses caused no harm since plaintiff failed to identify how they would have supported a defense that would have resulted in his acquittal).

Plaintiff in the instant case has not established that, had the defendant not committed the alleged acts of misconduct, plaintiff would have been acquitted. Thus, plaintiff has not established the prima facie element of a legally cognizable harm proximately caused by defendant's conduct. *See Niosi v. Aiello,* 69 A.2d 57 (D.C.1949).

Plaintiff has failed to show either that defendant breached the applicable standard of care owed by a criminal defense attorney to his client or that plaintiff suffered a legally cognizable harm. Accordingly, plaintiff cannot prevail on his claim of legal malpractice.

III. *Plaintiff's Claim of Intentional Infliction of Emotional Distress*

■ To establish a claim for intentional infliction of emotional distress in the District of Columbia, a plaintiff must prove that the defendant engaged in (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another. *Woodner v. Breeden,* 665 A.2d 929, 934–35 (D.C.1995).

With respect to the first element, " '[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.1982) *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982) (*quoting* Restatement (Second) of Torts § 46 cmt. d (1965)).

■ It is for the trial court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Sere,* 443 A.2d at 38. The case should be submitted to the jury if reasonable people could differ as to whether the conduct was extreme and outrageous. *Best,* 484 A.2d at 985. The clear implication is that if reasonable persons could only conclude that defendant's conduct was not "extreme and outrageous" the trial court must rule in defendant's favor as a matter of law. *King v. Kidd,* 640 A.2d 656, 666 (D.C.1995).

■ The plaintiff has not submitted, nor has independent research uncovered, any authority for the proposition that the conduct complained of in this case—that is, an attorney's failure to (1) adequately investigate identification evidence; (2) adequately interview potential witnesses; (3) make any pretrial motions; (4) move for a mistrial; (5) vigorously cross-examine; and (6) zealously advocate—constitute outrageous and egregious conduct. If the conduct does not rise to the level of outrageousness, tort liability may not be imposed.[5] *Best,* 484 A.2d at 986; *Sere,* 443 A.2d at 38.

Plaintiff has not shown by affidavit or otherwise that defendant intentionally inflicted

---

**5.** The courts have been strict in construing what conduct by an attorney, with respect to a client, constitutes a cause of action for intentional infliction of emotional distress. *See, e.g., Odesser v. Continental Bank,* 676 F.Supp. 1305 (E.D.Pa. 1987) (allegations that attorney fraudulently seized control of a business interest did not state such a cause of action); *McDaniel v. Gile,* 230 Cal.App.3d 363, 281 Cal.Rptr. 242 (1991) (allegations that attorney withheld legal services when sexual favors were not granted by client did state such a cause of action); *O'Neil v. Vasseur,* 118 Idaho 257, 796 P.2d 134 (1990) (attorney's delay of three years in resolution of a lawsuit which was eventually resolved by plaintiff, *pro se,* did not state such a cause of action); *Sherbak v. Doughty,* 72 A.D.2d 548, 420 N.Y.S.2d 724 (1979) (actions by an attorney who undertook to represent both sides in a real estate transaction and then took actions inimical to plaintiff's interests, including instituting a lawsuit against him, held not sufficiently "outrageous or extreme" as a matter of law).

52

emotional distress.[6] His complaint demonstrates, at most, that he disagreed with his attorney's trial tactics. As a matter of law, defendant's alleged professional misconduct does rise to the level of "outrageous" conduct. Plaintiff has not established a prima facie case of intentional infliction of emotional distress. Accordingly, the Court will grant defendant's motion for summary judgment. An appropriate Order accompanies this Memorandum Opinion.

**6.** As discussed above, plaintiff has utterly failed to show that defendant engaged in extreme and outrageous conduct, let alone that he did so intentionally or recklessly. Because plaintiff has failed to meet his burden of proof with respect to the first two prongs of the test for intentional infliction of emotional distress, the Court need not address the third element of proof—severe emotional distress.